**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26-00262-01-CR-W-SRB |
| | ) | |
| JORDAN ANDREW DERRICK, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY AND AN EVIDENTIARY HEARING, AND SUGGESTIONS IN SUPPORT

(Evidentiary Hearing Requested)

## TABLE OF CONTENTS


I. INTRODUCTION

II. PROCEDURAL AND FACTUAL BACKGROUND

III. LEGAL STANDARD

- A. Vindictive Prosecution
- B. Selective Prosecution Based on Protected Expression
- C. Discovery and Evidentiary Hearing

IV. ARGUMENT

- A. The Record Contains Objective Evidence That the Government's Charging Decision Was Motivated by Hostility Toward Mr. Derrick's Protected Expression
- B. The Charges Apply These Statutes to Publication-Based Conduct in an Unusual Way, While Similarly Situated Publishers Go Uncharged
- C. The Government's Presentation at the Detention Stage Corroborates That Motive
- D. At a Minimum, Mr. Derrick Has Made the Showing Required for Discovery and an Evidentiary Hearing

V. CONCLUSION

## TABLE OF AUTHORITIES

**Cases**

*Blackledge v. Perry*, 417 U.S. 21 (1974)

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)

*Oyler v. Boles*, 368 U.S. 448 (1962)

*Texas v. Johnson*, 491 U.S. 397 (1989)

*United States v. Armstrong*, 517 U.S. 456 (1996)

*United States v. Arthur*, No. 24-4306 (4th Cir. Dec. 3, 2025)

*United States v. Bass*, 536 U.S. 862 (2002)

*United States v. Campbell*, 410 F.3d 456 (8th Cir. 2005)

*United States v. Chappell*, 779 F.3d 872 (8th Cir. 2015)

*United States v. Goodwin*, 457 U.S. 368 (1982)

*United States v. Hirsch*, 360 F.3d 860 (8th Cir. 2004)

*United States v. Leathers*, 354 F.3d 955 (8th Cir. 2004)

*Wayte v. United States*, 470 U.S. 598 (1985)

**Constitutional Provisions**

U.S. Const. amend. I

U.S. Const. amend. V

**Statutes**

18 U.S.C. § 841(c)

18 U.S.C. § 841(d)

18 U.S.C. § 841(o)

18 U.S.C. § 841(p)

18 U.S.C. § 842(a)(1)

18 U.S.C. § 842(p)(2)(A)

18 U.S.C. § 842(p)(2)(B)

26 U.S.C. § 5845

26 U.S.C. § 5861(d)

**Rules**

Fed. R. Crim. P. 12(b)(3)(A)(iv)

**Other Authorities**

ATF, *Explosives Questions and Answers: Licenses and Permits*, https://www.atf.gov/resource-center/questions-and-answers

Commerce in Explosives; 2026 Annual List of Explosive Materials, 91 Fed. Reg. 37,142 (June 22, 2026)

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY AND AN EVIDENTIARY HEARING, AND SUGGESTIONS IN SUPPORT**

Defendant Jordan Andrew Derrick, by and through undersigned counsel, and pursuant to the Due Process Clause of the Fifth Amendment, the First Amendment, and Federal Rule of Criminal Procedure 12(b)(3)(A)(iv), moves the Court to dismiss the Indictment on the ground that this prosecution was brought to punish Mr. Derrick for constitutionally protected expression. In the alternative, Mr. Derrick requests an order compelling discovery on the government's charging decision and an evidentiary hearing. In support of this motion, Mr. Derrick states as follows.

## I. INTRODUCTION

For more than two and a half years, Mr. Derrick openly published videos documenting his research and experimentation with energetic materials. Over the same period, he was known for pointed political and social commentary, including criticism of the State of Israel, distributed through video and social media. The government's own charging papers and its presentation at the probable cause and detention hearing are saturated with references to that commentary, none of which bears on any element of the charged offenses. The government has also sought to tie Mr. Derrick's publications to violent events with which he had no connection. And it has applied statutes to publication-based conduct that remains commonplace, and uncharged, across widely viewed online platforms.

Taken together, this record constitutes objective evidence that the decision to prosecute was driven by hostility toward Mr. Derrick's protected expression. At a minimum, it is "some

evidence" warranting discovery and a hearing. *United States v. Armstrong*, 517 U.S. 456, 468 (1996).

## II. PROCEDURAL AND FACTUAL BACKGROUND

1. On May 8, 2026, the government filed a criminal complaint against Mr. Derrick, supported by an affidavit (the "Complaint Affidavit"). (Ex. A.) On May 12, 2026, agents of the Federal Bureau of Investigation executed a warrant at Mr. Derrick's residence and arrested him.

2. Following a combined probable cause and detention hearing, Mr. Derrick was ordered detained pending trial. He remains in custody at the Pettis County Jail.

3. On May 28, 2026, a grand jury returned a four-count Indictment charging Mr. Derrick with: (Count One) engaging in the business of manufacturing explosive materials without a license, 18 U.S.C. § 842(a)(1); (Count Two) distribution of information relating to explosives, 18 U.S.C. § 842(p)(2)(B); and (Counts Three and Four) possession of unregistered destructive devices, 26 U.S.C. §§ 5845 and 5861(d).

4. Beginning on or about September 18, 2023, and continuing until his arrest, Mr. Derrick published videos on the internet documenting research and experimentation involving historical and novel energetic materials. The videos were made freely available to the general public.

5. During the same period, Mr. Derrick published political and social commentary through video and social media, including commentary critical of the State of Israel.

6. The Complaint Affidavit devotes attention to that commentary. For example, it describes a video in which Mr. Derrick enters his garage and wipes his boots on an Israeli flag. (Ex. A at 31.) That description is not tied to any element of any charged offense.

7. The Complaint Affidavit also invokes the January 1, 2025 terrorist attack in New Orleans, Louisiana (Ex. A at 4), and an explosion in Odessa, Missouri (Ex. A at 27), in

connection with Mr. Derrick's videos. The government has not alleged that Mr. Derrick had any contact with, knowledge of, or connection to either event or to any person involved.

8. At the probable cause and detention hearing, government counsel characterized Mr. Derrick's expression in terms such as "hate speech" and "bigotry," emphasized his social media statements, suggested that Mr. Derrick "thinks he has the right to do this," and attributed past and future violent incidents to his videos. (Ex. C.)

9. Numerous other content creators have published, and continue to publish, widely viewed and monetized videos depicting the manufacture, handling, or use of energetic materials, including thermite and high explosives. (Ex. B.) Undersigned counsel is aware of no prosecution of those creators under the statutes charged here.

## III. LEGAL STANDARD

### A. Vindictive Prosecution

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974). A prosecution designed to penalize a defendant for exercising a protected right violates due process, and the remedy is dismissal.

In the Eighth Circuit, a defendant may establish vindictive prosecution in either of two ways: (1) by objective evidence that the prosecutor's decision was intended to punish the defendant for exercising a legally protected right, or (2) in certain circumstances, through a presumption of vindictiveness arising from a reasonable likelihood of vindictiveness. *See United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004); *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015). Where actual vindictiveness is shown, the defendant must demonstrate that

the prosecution would not have been brought but for the improper motive. *See United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005).

**B. Selective Prosecution Based on Protected Expression**

Although prosecutors enjoy broad discretion, that discretion is "subject to constitutional constraints." *Wayte v. United States*, 470 U.S. 598, 608 (1985). The decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," including the exercise of protected statutory and constitutional rights. *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). A defendant must show that the prosecution had a discriminatory effect, meaning that similarly situated individuals were not prosecuted, and that it was motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 465; *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004).

**C. Discovery and Evidentiary Hearing**

A defendant is entitled to discovery on a claim of selective or vindictive prosecution upon "some evidence tending to show the existence of the essential elements" of the claim. *Armstrong*, 517 U.S. at 468 (citation omitted); *see also United States v. Bass*, 536 U.S. 862, 863–64 (2002) (per curiam). This threshold is lower than the showing required for dismissal.

## IV. ARGUMENT

**A. The Record Contains Objective Evidence That the Government's Charging Decision Was Motivated by Hostility Toward Mr. Derrick's Protected Expression.**

Political and social commentary, including harsh criticism of a foreign government, lies at the core of the First Amendment. Symbolic expression directed at a national flag is likewise protected, however offensive some may find it. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989).

The government's charging papers and hearing presentation nevertheless treat this expression as a feature of the case.

The Complaint Affidavit's description of Mr. Derrick wiping his boots on an Israeli flag (Ex. A at 31) serves no evidentiary purpose with respect to unlicensed manufacturing, distribution of information, or possession of an unregistered device. Its inclusion signals that the government regards Mr. Derrick's viewpoint as relevant to whether he should be prosecuted. Government counsel's characterization of his commentary as "hate speech" and "bigotry" at the detention hearing reinforces that inference. (Ex. C.)

The government's effort to link Mr. Derrick's publications to the New Orleans attack and the Odessa explosion points in the same direction. (Ex. A at 4, 27.) The government has identified no contact between Mr. Derrick and any person involved in either event, and no evidence that Mr. Derrick knew of any such person. Attributing unrelated violence to a publisher, without any factual link to the publisher himself, reflects a desire to recast protected publication as dangerous conduct. It does not reflect a neutral assessment of the charged elements.

Finally, government counsel's remark that Mr. Derrick "thinks he has the right to do this" (Ex. C) is revealing. It frames the case as a response to Mr. Derrick's assertion of his right to publish, which is precisely the motive the Due Process Clause forbids. *Bordenkircher*, 434 U.S. at 363.

**B. The Charges Apply These Statutes to Publication-Based Conduct in an Unusual Way, While Similarly Situated Publishers Go Uncharged.**

**Count Two.** Section 842(p)(2)(B) reaches only a person who distributes information relating to explosives "knowing that such person intends to use" it in furtherance of a federal crime of violence. 18 U.S.C. § 842(p)(2)(B). The Fourth Circuit recently upheld the statute against a First Amendment challenge precisely because this knowledge requirement confines it

to speech integral to criminal conduct, explaining that "the conduct proscribed by § 842(p)(2)(B) must be directed toward some specified person(s)," whereas "[s]ection 842(p)(2)(A) contains no such limiter." *United States v. Arthur*, No. 24-4306, slip op. at 27 n.12 (4th Cir. Dec. 3, 2025) (published). Publication to an anonymous general audience, without knowledge of any particular recipient or any recipient's intent, falls outside that core. Undersigned counsel has located no prosecution under § 842(p)(2)(B) premised solely on freely available public video without an identified recipient whose criminal intent was known to the defendant.

**Count One.** Section 842(a)(1) is directed at persons "engage[d] in the business" of manufacturing explosive materials. The Bureau of Alcohol, Tobacco, Firearms and Explosives has long advised the public that "[p]ersons who manufacture explosives for their personal, non-business use are not required to have a manufacturer's license." ATF, *Explosives Questions and Answers: Licenses and Permits*, https://www.atf.gov/resource-center/questions-and-answers (last visited Oct. 8, 2026). Treating the free publication of research video as a "business" of manufacturing is, to counsel's knowledge, without precedent. The count's object is equally strained. "Explosive materials" means "explosives, blasting agents, and detonators," 18 U.S.C. § 841(c), and "explosives" means compounds "the primary or common purpose of which is to function by explosion," as identified on the list the Attorney General must publish annually in the Federal Register. *Id.* § 841(d); *see* Commerce in Explosives; 2026 Annual List of Explosive Materials, 91 Fed. Reg. 37,142 (June 22, 2026). Count One nonetheless lists aminoguanidine bicarbonate, a compound sold openly to the public that appears nowhere on that list, and lists EGDN, HMTD, and TNX—substances never recovered and identified in no laboratory report. EGDN in particular is a substance Congress has designated as a "detection agent," a marker that must be added to plastic explosives so that they can be detected under the Convention on the

Marking of Plastic Explosives. 18 U.S.C. § 841(o), (p)(1). The decision to name such substances in a charging instrument, untethered to anything seized, is consistent with a prosecution built to portray Mr. Derrick as dangerous rather than to describe what he did.

**Counts Three and Four.** A "destructive device" under 26 U.S.C. § 5845(f) excludes any device "neither designed nor redesigned for use as a weapon." The government's theory treats research demonstrations and unassembled components located in a multi-purpose workshop as registrable weapons, even though Mr. Derrick has publicly advocated avoiding destructive devices altogether.

**Similarly situated publishers.** Widely followed content creators have published, and profited from, videos depicting large detonations, the preparation of high explosives, and the use of thermite. (Ex. B.) These publishers reach audiences far larger than Mr. Derrick's. Undersigned counsel is aware of no effort to prosecute them under § 842(a)(1) or § 842(p)(2)(B) based on those publications. What distinguishes Mr. Derrick is not the nature of his research publications but the content of his political and social commentary.

Mr. Derrick recognizes that questions about the reach of these statutes may also be raised through other motions, and he reserves those arguments. They are presented here because the novelty of the government's theories, combined with its focus on his viewpoint, supports the inference that the charging decision was driven by an impermissible motive.

**C. The Government's Presentation at the Detention Stage Corroborates That Motive.**

Mr. Derrick disputes material portions of the testimony offered at the detention hearing, including testimony suggesting that he remained inside his residence during the execution of the warrant and sent his family out first. (Ex. C; Ex. D.) The government also portrayed Mr. Derrick's lawfully possessed firearms and ammunition as evidence of dangerousness. (Ex. C.)

Mr. Derrick does not ask the Court to revisit the detention order in this motion. He offers these facts because the government's willingness to characterize protected and lawful conduct as threatening is consistent with the retaliatory motive reflected in its charging papers.

**D. At a Minimum, Mr. Derrick Has Made the Showing Required for Discovery and an Evidentiary Hearing.**

The record described above is "some evidence" of both elements. *Armstrong*, 517 U.S. at 468. Mr. Derrick therefore requests an order directing the government to produce, or to submit for *in camera* review where privilege is asserted, the following:

1. All documents and communications reflecting the reasons for opening the investigation into Mr. Derrick, including any referral, tip, or assessment that references his political, social, or religious commentary;
2. All documents and communications among the investigating agencies and the United States Attorney's Office referencing Mr. Derrick's commentary concerning Israel, "hate speech," "bigotry," or his social media statements;
3. All information on which the government relied in connecting Mr. Derrick's publications to the January 1, 2025 New Orleans attack and the Odessa, Missouri explosion, including any evidence that any person involved viewed his content;
4. Any documents reflecting consideration of whether to investigate or prosecute other publishers of energetic-materials content under 18 U.S.C. § 842(a)(1) or § 842(p)(2)(B), and any Department of Justice guidance governing prosecutions under § 842(p)(2)(B) based on publicly disseminated material; and
5. Identification of all prior prosecutions under 18 U.S.C. § 842(p)(2)(B) in which the charged distribution consisted of publicly available material without an identified recipient.

Mr. Derrick further requests an evidentiary hearing at which he may present evidence and examine witnesses concerning the government's charging decision.

## V. CONCLUSION

For these reasons, Mr. Derrick respectfully requests that the Court dismiss the Indictment. In the alternative, he requests that the Court order the discovery described above, set this matter for an evidentiary hearing, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

**COMBS WATERKOTTE**

/s/ Matthew Brown
Matthew Brown, Mo. Bar No. 63457
231 S. Bemiston Avenue, Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 900-4357
Email: mb@combswaterkotte.com

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court on the date reflected in the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for the United States.

/s/ Matthew Brown
Matthew Brown

## INDEX OF EXHIBITS

Exhibit A: Affidavit in Support of Criminal Complaint (May 8, 2026), excerpts at pp. 4, 27, and 31

Exhibit B: Compilation of publicly available energetic-materials videos published by other content creators

Exhibit C: Transcript of Probable Cause and Detention Hearing

Exhibit D: Declaration Regarding the Events of May 12, 2026